# STATE OF CONNECTICUT *v.* STANLEY BENJAMIN
## (SC 18390)

Rogers, C. J., and Norcott, Katz, Palmer and Vertefeuille, Js.

Argued October 18—officially released December 14, 2010

*Glenn W. Falk*, special public defender, for the appellant (defendant).

*Robert J. Scheinblum*, senior assistant state's attorney, with whom, on the brief, were *John C. Smriga*,

state's attorney, and *Pamela J. Esposito*, assistant state's attorney, for the appellee (state).

*Opinion*

KATZ, J. The defendant, Stanley Benjamin, appeals, pursuant to our grant of certification, from the Appellate Court's judgment affirming: (1) the trial court's judgment revoking his probation pursuant to General Statutes § 53a-32[1] on the basis of its finding that the defendant had committed the crimes of assault on an elderly person in the third degree[2] and possession of

---

[1] General Statutes § 53a-32 provides in relevant part: "(a) At any time during the period of probation or conditional discharge, the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge, or may issue a notice to appear to answer to a charge of such violation, which notice shall be personally served upon the defendant. Any such warrant shall authorize all officers named therein to return the defendant to the custody of the court or to any suitable detention facility designated by the court. . . .

"(d) If such violation is established, the court may: (1) Continue the sentence of probation or conditional discharge; (2) modify or enlarge the conditions of probation or conditional discharge; (3) extend the period of probation or conditional discharge, provided the original period with any extensions shall not exceed the periods authorized by section 53a-29; or (4) revoke the sentence of probation or conditional discharge. If such sentence is revoked, the court shall require the defendant to serve the sentence imposed or impose any lesser sentence. Any such lesser sentence may include a term of imprisonment, all or a portion of which may be suspended entirely or after a period set by the court, followed by a period of probation with such conditions as the court may establish. No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by the introduction of reliable and probative evidence and by a preponderance of the evidence."

Although § 53a-32 was amended since the time of the defendant's probation revocation proceedings; see Public Acts 2008, No. 08-102, § 7; the changes, including the redesignation of certain subsections, are not relevant to this appeal. For purposes of clarity, we refer herein to the current revision of the statute.

[2] "A person is guilty of assault of an elderly . . . person in the third degree when such person commits assault in the third degree under section 53a-61 and . . . the victim of such assault has attained at least sixty years of age . . . ." General Statutes § 53a-61a (a) (1). "A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person;

narcotics; and (2) the judgment of conviction, rendered following a jury trial, of possession of narcotics in violation of General Statutes § 21a-279. *State* v. *Benjamin*, 114 Conn. App. 225, 968 A.2d 991 (2009). This court granted certification on the following issue: "Did the Appellate Court properly decline to reach the merits of the defendant's claims concerning one of two grounds on which the violation of probation finding was based [assault on an elderly person], when the defendant requested a remand for resentencing based solely on the less serious, undisputed ground [possession of narcotics]?" *State* v. *Benjamin*, 292 Conn. 912, 973 A.2d 660 (2009). Although the defendant had not challenged the propriety of either judgment regarding the charge of possession of narcotics, he had claimed that, insofar as the trial court's judgment revoking his probation had been based on its finding that he had assaulted an elderly person, that judgment should have been set aside because: (1) in making that finding, the court improperly relied on identification evidence that it should have suppressed; and (2) the evidence did not otherwise support the finding that he had been the perpetrator of the assault. The defendant further claimed that the trial court had abused its discretion by imposing a four year term of imprisonment based, in part, on his assault of an elderly person.

On appeal to this court, the defendant contends that the Appellate Court improperly concluded that it was unnecessary for it to review the merits of either of his claims regarding his identity as the perpetrator of the assault because the revocation of probation also had been based on his possession of narcotics, and that one basis for revocation was legally sufficient. With regard

or (2) he recklessly causes serious physical injury to another person; or (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon, a dangerous instrument or an electronic defense weapon." General Statutes § 53a-61 (a).

to his claim that the case should have been remanded for sentencing solely on the basis of his narcotics possession because the severity of his sentence had been affected by the assault charge, the defendant contends that the Appellate Court improperly concluded that that issue had been briefed inadequately. We conclude that the Appellate Court improperly determined that it did not need to reach the merits of the defendant's identification claims because of the impact the assault had on his sentence. We nonetheless conclude that, even if we were to assume, arguendo, that the trial court improperly had relied on the identification evidence, there was nevertheless sufficient independent evidence on which the trial court reasonably could have made its finding that the defendant had committed the assault. Therefore, we conclude that the trial court properly revoked the defendant's probation and sentenced him on the basis of both the assault and the narcotics possession. Accordingly, we affirm the Appellate Court's judgment, but on different reasoning.

Before turning to the specific facts underlying the present case, we note the following procedural history. The state had filed an opposition to the defendant's petition for certification to appeal arguing, among other things, that the Appellate Court properly had refused to review the defendant's legal claims because they had been briefed inadequately. Following this court's grant of certification, pursuant to Practice Book § 84-11 (a), the state filed the following statement of alternate grounds upon which the trial court's judgment should be affirmed if this court were to conclude that the Appellate Court improperly had refused to review the merits of the defendant's claims: "The trial court properly exercised its discretion in revoking the defendant's probation [and in sentencing him] based, in part, on the defendant's assault of an elderly person . . . as well as possession of narcotics . . . where: (1) There

was sufficient evidence to support the trial court's conclusion that the defendant violated the terms of his probation based on third-degree assault of an elderly person, as well as possession of narcotics; (2) [t]he trial court properly refused to suppress the [victim's] out-of-court identification because the identification procedure was neither unnecessarily suggestive nor unreliable; and (3) [a]lternatively, even assuming, arguendo, that the trial court should have suppressed the out-of-court identification, there was more than enough evidence without it to find the defendant in violation of probation based, in part, on his assault of an elderly person." The state had raised and briefed each of these arguments in the Appellate Court, but that court did not reach them in light of its conclusion that the defendant had forfeited his right to appellate review due to inadequate briefing. See *State* v. *Benjamin*, supra, 114 Conn. App. 232–33.

Following its reexamination of the record in this case, the state conceded in its brief and again during its oral argument to this court that the defendant adequately had briefed his claims that the trial court's judgment revoking his probation and sentencing him to a four year term of imprisonment should be reversed and that the case should be remanded for sentencing solely on the basis of his narcotics possession. Indeed, the state recognized that "*all of the issues* raised by the defendant centered upon his assertion that the trial court could not have factored his assault on an elderly person into its revocation or sentencing decisions." (Emphasis added.)

With this belated concession in mind, we turn to the following additional undisputed facts and procedural history, as set forth in the Appellate Court's opinion, that form the background of the issues before us. "The defendant was convicted of selling narcotics and, in 2003, was sentenced to a five year term of incarceration,

execution suspended after one year, followed by three years of probation. In 2003, the defendant was released from incarceration, signed a conditions of probation form and began serving his probation. As is customary, one of the conditions of the defendant's probation was that he not violate any law of the state of Connecticut. On two subsequent occasions, the court extended the defendant's term of probation following the defendant's violation of the conditions of his probation. Those events are not germane to this appeal.

"On June 10, 2006, while the defendant was serving his probation, he was arrested and charged, under docket number CR-06-216449-S (criminal case), with [having committed on that same day] possession of narcotics, assault of an elderly person in the third degree and attempt to commit robbery in the second degree. Following the defendant's arrest, the defendant was charged, under docket number CR-02-182546-S (violation of probation case), with having violated the terms of his probation by engaging in criminal conduct on June 10, 2006. The court granted the state's motion to consolidate the violation of probation case and the criminal case. [The state subsequently filed an amended information eliminating the robbery charge after the testimony of the alleged victim of the assault and robbery did not support the latter charge.]

"During jury deliberations in the criminal case, the court orally set forth its finding that the defendant had violated his probation by engaging in criminal conduct. The court found that on June 10, 2006, the defendant possessed narcotics and committed an assault on an elderly person, as alleged by the state in the criminal case.

"The jury found the defendant guilty of the narcotics charge but found him not guilty of the assault charge. Prior to sentencing in the criminal case, the court heard

evidence in the dispositional phase of the violation of probation case. Following that proceeding, the court found that the beneficial purposes of probation were no longer being served. After hearing argument as to the proper sentence, the court noted that the defendant, aged fifty-three years, had an extensive record of criminal activity that spanned nearly his entire adult life and that prior efforts at rehabilitation had not yielded positive results. The court deemed the defendant's presentence investigation report 'one of the worst' that it had ever reviewed. The court also discussed the criminal activity at issue, possession of narcotics and assault. The court viewed that criminal conduct as evidence that the defendant had not made any progress toward becoming a law-abiding person.

"In the violation of probation case, the court sentenced the defendant to serve four years of his unexecuted sentence. As a result of the conviction in the criminal case, the court sentenced the defendant to a three year term of incarceration. The court ordered that the sentence in the criminal case run consecutively to the sentence in the violation of probation case, resulting in a total effective term of imprisonment of seven years." *State* v. *Benjamin,* supra, 114 Conn. App. 227–29.

As we previously have noted, the Appellate Court affirmed the judgment on appeal, concluding that it was unnecessary for it to review the merits of the defendant's claims because the violation of probation judgment could be affirmed solely on the basis of the trial court's unchallenged finding with respect to the possession of narcotics and that the claim for resentencing was inadequately briefed. Our independent review of the record confirms the representations of both parties that all the issues raised by the defendant in the Appellate Court were predicated on his challenge to the trial court's improper reliance on his assault on an elderly

person in its decision to revoke his probation and impose a four year prison term, which the defendant did brief adequately. Thus, although the Appellate Court was correct that the trial court's unchallenged finding regarding the defendant's possession of narcotics provided a sufficient basis for an *adjudication* of a violation of probation, irrespective of whether the defendant had committed the assault; see *State* v. *Wells*, 112 Conn. App. 147, 156, 962 A.2d 810 (2009); the Appellate Court failed to recognize that the defendant's briefing on those claims also addressed the *dispositional* phase of the violation of probation proceeding.[3] See *State* v. *Preston*, 286 Conn. 367, 375–76, 944 A.2d 276 (2008) ("[R]evocation of probation hearings, pursuant to § 53a-32, are comprised of two distinct phases, each with a distinct purpose. . . . In the evidentiary phase, [a] factual determination by a trial court as to whether a probationer has violated a condition of probation must first be made. . . . In the dispositional phase, [i]f a violation is found, a court must next determine whether probation should be revoked because the beneficial aspects of probation are no longer being served." [Citations omitted; internal quotation marks omitted.]). Presumably, in the dispositional phase, the question of whether, in addition to possessing narcotics, the defendant also had committed the assault would have had some bearing on which disposition the court ordered and, if the

---

[3] In addition to his claim that the case should have been remanded for sentencing based solely on his narcotics possession because the severity of his sentence had been affected by the assault charge, the defendant also argued based on case law from Arizona that, faced only with the narcotics possession, the trial court "might have concluded that revocation was not warranted . . . ." (Internal quotation marks omitted.) For the reasons set forth in *State* v. *Wells*, supra, 112 Conn. App. 156, in the absence of some unique circumstance not present in this case, we abide by our well recognized jurisprudence that "to support a judgment of revocation of probation, [o]ur law does not require the state to prove that all conditions alleged were violated; it is sufficient to prove that one was violated." (Internal quotation marks omitted.)

court ordered the defendant to serve some portion of his suspended sentence as to that disposition, what that sentence would be. See General Statutes § 53a-32 (d) ("If such violation is established, the court may: [1] Continue the sentence of probation or conditional discharge; [2] modify or enlarge the conditions of probation or conditional discharge; [3] extend the period of probation or conditional discharge, provided the original period with any extensions shall not exceed the periods authorized by section 53a-29; or [4] revoke the sentence of probation or conditional discharge. If such sentence is revoked, the court shall require the defendant to serve the sentence imposed or impose any lesser sentence. Any such lesser sentence may include a term of imprisonment, all or a portion of which may be suspended entirely or after a period set by the court, followed by a period of probation with such conditions as the court may establish."). Rather than remand the case to the Appellate Court for it to reconsider the defendant's claims on the merits, however, we will address them in an effort to resolve this case expeditiously. See *Finan* v. *Finan*, 287 Conn. 491, 498, 949 A.2d 468 (2008) (" 'Because both parties have briefed the issue and it was addressed at oral argument before this court,' we will review the issue in the interest of judicial economy. *Montoya* v. *Montoya*, 280 Conn. 605, 617 n.11, 909 A.2d 947 [2006].").

We begin with the defendant's underlying claim that, following a hearing, the trial court improperly denied his motion to suppress the state's identification evidence from the alleged victim of the assault, Jesus Abrams, and that the trial court improperly relied on this impermissibly suggestive and unreliable identification in concluding that the defendant was the perpetrator of the assault of an elderly person. The defendant contends that, without this improper identification procedure, the evidence was not sufficient to support the

court's finding in the violation of probation case that he had committed an assault of an elderly person, and, accordingly, the judgment should be reversed and the case remanded for the trial court to consider whether to revoke the defendant's probation[4] and, if so, what disposition to impose. In support of his predicate claim that the trial court improperly denied his motion to suppress Abrams' identification, the defendant has provided a recitation of the evidence adduced at the hearing on the motion to suppress that raises questions about the suggestiveness of the identification procedure and the lack of reliability of the identification itself, particularly in light of the fact that Abrams was unable to identify the defendant at the hearing.[5] See *State* v. *Ledbetter*, 275 Conn. 534, 547–53, 881 A.2d 290 (2005) (discussing relevant considerations for determining suggestiveness and reliability), cert. denied, 547 U.S. 1082, 126 S. Ct. 1798, 164 L. Ed. 2d 537 (2006).

Integral to this claim is an assumption that a claim of unduly suggestive identification under the due process clause applies to a revocation of probation proceeding, an issue that this court has not yet definitively resolved. See *State* v. *Daniels*, 248 Conn. 64, 80 n.16, 726 A.2d 520 (1999) (assuming, without deciding, that claim of unduly suggestive identification under due process clause applies to revocation of probation proceeding), overruled on other grounds by *State* v. *Singleton*, 274 Conn. 426, 876 A.2d 1 (2005); see also *State* v. *Davis*, 229 Conn. 285, 294, 641 A.2d 370 (1994) ("Although we do not decide the constitutional issue raised by the defendant, we must examine the issue of the applicable

---

[4] For the reasons set forth in footnote 3 of this opinion, we do not reach the defendant's challenge to the propriety of his adjudication of a violation of his probation, and we limit our review to his claims related to the disposition following the finding of such a violation.

[5] This identification had no relevance to the defendant's possession of narcotics conviction, which, as we previously have noted, has not been challenged on appeal.

standard of proof for probation revocation proceedings in the context that the privilege of probation, once granted, is a constitutionally protected interest. The due process clause of the fourteenth amendment to the United States constitution requires that certain minimum procedural safeguards be observed in the process of revoking the conditional liberty created by probation. . . . This is so because the loss of liberty entailed is a serious deprivation requiring that the [probationer] be accorded due process." [Citations omitted; internal quotation marks omitted.]). As in *Daniels*, however, we need not decide that issue in the present case, because, even if we were to assume, without deciding, that the trial court improperly relied on the identification, we ultimately conclude that there was sufficient independent evidence upon which the trial court properly could have relied to conclude that the state had proven by a preponderance of the evidence that the defendant had committed the assault.[6]

The evidence produced by the state at trial discloses the following additional facts upon which the trial court relied in making its determination that the defendant had committed the assault on Abrams. On June 10, 2006, Sergeants John Cummings and Kevin Gilleran, and Officer James Geremia of the Bridgeport police department, responded to a dispatch reporting a robbery and assault at 976 Iranistan Avenue in Bridgeport. They were provided additional information that the suspect was a black male, wearing a baseball cap, and that he had fled into apartment 10 at that location. When

---

[6] This determination also obviates the need for this court to direct the Appellate Court to remand the case to the trial court for a new dispositional phase of the probation revocation proceeding to consider whether the sentence based solely on the defendant's possession of narcotics was appropriate or whether to reduce the sentence in the absence of sufficient evidence of the assault. See *State* v. *Strickland*, 243 Conn. 339, 348, 703 A.2d 109 (1997) (noting that second, or dispositional, phase of probation hearing occurs if violation of probation is established in first phase).

they arrived at the scene, the officers were greeted by a black male, standing in the doorway of the building. The male, later identified as the defendant, was wearing a baseball cap and was very excited, trying to get the officer's attention. The defendant appeared nervous, and even before the officers had an opportunity to question him or relate that they were responding to a reported robbery and assault, the defendant volunteered that the person the police were looking for was a Hispanic male who had fled down the street. Rather than chase after the person who the defendant claimed had committed the robbery and assault that the police were there to investigate, Cummings asked the defendant where he lived. When the defendant answered that he lived in apartment 10 at the address where they were standing, Cummings attempted to speak further with him, but the defendant became agitated and aggressive, necessitating his restraint. Following further investigation by other Bridgeport police officers, the defendant was placed under arrest for robbery and assault, and a search incident to that arrest resulted in the discovery of crack cocaine in the defendant's pants pocket.

The law governing the standard of proof for a violation of probation is well settled. Even when a defendant is acquitted of the underlying crime leading to the probation revocation proceeding, probation still may be revoked because all that is required in a probation violation proceeding is enough to satisfy the court within its sound judicial discretion that the probationer has not met the terms of his probation. Although the revocation may be based upon criminal conduct, "the constitution does not require that proof of such conduct be sufficient to sustain a criminal conviction." (Internal quotation marks omitted.) *Payne* v. *Robinson,* 10 Conn. App. 395, 402, 523 A.2d 917 (1987), aff'd, 207 Conn. 565, 541 A.2d 504, cert. denied, 488 U.S. 898, 109 S. Ct. 242, 102 L. Ed. 2d 230 (1988). Furthermore, it is well established

that "the outcome of a criminal proceeding simply has no relevance whatsoever to an independent determination on the same facts made in a revocation of probation hearing." *State* v. *Gauthier*, 73 Conn. App. 781, 794, 809 A.2d 1132 (2002), cert. denied, 262 Conn. 937, 815 A.2d 137 (2003); see also id. ("[T]he most that can be said regarding the jury verdict is that the jury found that the alleged criminal conduct had not been proven beyond a reasonable doubt. The jury had no occasion to consider whether the charged conduct had been proven by a preponderance of the evidence, the standard of proof applicable to a probation revocation hearing.").

It is also well settled that "a trial court may not find a violation of probation unless it finds that the predicate facts underlying the violation have been established by a preponderance of the evidence at the hearing—that is, the evidence must induce a reasonable belief that it is more probable than not that the defendant has violated a condition of his or her probation." *State* v. *Davis*, supra, 229 Conn. 302. "In making its factual determination, the trial court is entitled to draw reasonable and logical inferences from the evidence." (Internal quotation marks omitted.) *State* v. *McElveen*, 69 Conn. App. 202, 205, 797 A.2d 534 (2002). Accordingly, "[a] challenge to the sufficiency of the evidence is based on the court's factual findings. The proper standard of review is whether the court's findings were clearly erroneous based on the evidence. . . . A court's finding of fact is clearly erroneous and its conclusions drawn from that finding lack sufficient evidence when there is no evidence in the record to support [the court's finding of fact] . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *State* v. *Hooks*, 80 Conn. App. 75, 80–81, 832 A.2d 690, cert. denied, 267 Conn. 908,

840 A.2d 1171 (2003). As we previously have indicated, however, a trial court's finding of a violation of probation is not clearly erroneous solely because of an acquittal at the criminal trial on the basis of the same alleged unlawful conduct.

The record in the present case shows that sufficient evidence was presented to support the trial court's finding that the state had demonstrated by a preponderance of the evidence that the defendant had perpetrated the assault on Abrams. As the trial court found in accordance with the evidence, the defendant was the only person in the area of the assault who matched the description of the suspect, and he was standing at the scene of the crime when the police officers arrived there within a very short time after the assault. As soon as the defendant saw the police and before the officers had a chance to inform him of the basis for their investigation, the defendant approached the officers and attempted to mislead them by stating that the assailant was a Hispanic male who had fled from the scene, urging them to pursue this alleged assailant quickly. The trial court reasonably relied on this evidence to infer the defendant's guilt. See *State* v. *Moody*, 214 Conn. 616, 626, 573 A.2d 716 (1990) ("misstatements of an accused, which a jury could reasonably conclude were made in an attempt to avoid detection of a crime or responsibility for a crime or were influenced by the commission of the criminal act, are admissible as evidence reflecting a consciousness of guilt" [internal quotation marks omitted]); *State* v. *Oliveras*, 210 Conn. 751, 759, 557 A.2d 534 (1989) ("[e]vidence that an accused has taken some kind of evasive action to avoid detection for a crime, such as flight, concealment of evidence, or [giving] a false statement, is ordinarily the basis for a charge on the inference of consciousness of guilt"). Last, but certainly not least, the defendant told the police that he lived in apartment 10 of the

building to which they had responded, which is where the assailant reportedly had fled following the assault. Accordingly, there was sufficient evidence to support the trial court's finding that the defendant had assaulted an elderly person. In light of the fact that the defendant has not challenged the propriety of his conviction for possession of narcotics, this determination is dispositive of the defendant's appeal.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.